UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

NICHOLAS ZIMMERMAN, et al.,

                              Plaintiffs,              9:25-CV-0434
                                                       (BKS/DJS)
                    v.

CAPTAIN E.J. MEYERS, et al.,

                              Defendants.
_____

APPEARANCES:                                OF COUNSEL:

NICHOLAS ZIMMERMAN
Plaintiff, pro se
02-A-1663
Elmira Correctional Facility
P.O. Box 500
Elmira, NY 14902

DESIRAY ZIMMERMAN
Plaintiff, pro se
P.O. Box 468
Schenectady, NY 12301

BRENDA K. SANNES
Chief United States District Judge

**DECISION AND ORDER**

In April 2025, pro se plaintiffs Nicholas Zimmerman ("N. Zimmerman"), Desiray

Zimmerman ("D. Zimmerman"), Martins Odafe ("Odafe"), Zeeshan Medhi ("Medhi"), Arabella

Adeyoye ("Adeyoye"), and Raduan Khan ("Khan") filed a complaint pursuant to 42 U.S.C. §

1983.  Dkt. No. 1 ("Compl.").  Before the Court could review the submission, plaintiffs filed an

amended complaint, *see* Dkt. No. 2 ("Am. Compl.") with exhibits (Dkt. No. 3). Plaintiffs also filed motions to proceed in forma pauperis ("IFP"). Dkt. Nos. 5-11, 14, 15. The Court granted plaintiffs' IFP applications. *See* Dkt. Nos. 13, 16.

In a Decision and Order filed on October 1, 2025 (the "October 2025 Order"), the Court reviewed plaintiff's amended complaint for sufficiency pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See* Dkt. No. 16. Upon review, the Court severed and transferred the claims related to N. Zimmerman's incarceration at Wende Correctional Facility ("Wende C.F"). and Elmira Correctional Facility ("Elmira C.F.") to the United States District Court for the Western District of New York. Dkt. No. 16 at 15-16. With respect to the remaining claims, the Court found that the following survived review and required a response: (1) First Amendment freedom to solicit claims against defendant Great Meadow Correctional Facility ("Great Meadow C.F.") Superintendent Bradford ("Bradford") asserted by D. Zimmerman; (2) Eighth Amendment deliberate medical indifference claims against defendants Great Meadow C.F. Corrections Officer Sidiq ("Sidiq"), Corrections Officer Mann ("Mann"), Corrections Officer Corlew ("Corlew"), and Sergeant Gale ("Gale"); (3) Eighth Amendment conditions-of-confinement claims against defendants Great Meadow C.F. Corrections Officer Tanzer ("Tanzer") and Great Meadow C.F. Superintendent Collins ("Collins"); and (4) First Amendment retaliation claims against defendants Great Meadow C.F. Corrections Officer Johnson ("Johnson"), Corrections Officer K. Marsicano ("Marsicano"), and Nurse Heidi L. Maxwell ("Maxwell"). *Id.* at 43-44. The Court dismissed the remaining claims, without prejudice, for failure to state a claim. *See id.* Plaintiffs were directed to provide documents for service. *See id.* at 44.

On December 19, 2025, in lieu of documents for service, plaintiffs filed an amended complaint.  Dkt. No. 25 ("Am. Compl.") and Dkt. No. 26 (exhibits).  On December 30, 2025, N. Zimmerman filed a motion for reconsideration of the October 2025 Order.  Dkt. No. 27.  Before the Court could review the amended pleading, plaintiffs filed a second amended complaint intended to supersede the prior pleadings.  Dkt. No. 28 ("Sec. Am. Compl."); Dkt. No. 29.

## II.    MOTION FOR RECONSIDERATION

A court may reconsider a previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence comes to light that was not previously available; or (3) it is necessary to remedy a clear error of law or prevent manifest injustice.  *Doe v. New York City Dep't of Soc. Servs*., 709 F.2d 782, 789 (2d Cir. 1983).  The standard for granting a motion for reconsideration is strict; "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Shrader v. CSX Transp., Inc*., 70 F.3d 255, 257 (2d Cir. 1995).

Plaintiff filed his motion to reconsider after filing an amended complaint and prior to filing a second amended complaint.  Because the amended pleadings replace the original complaint, plaintiff's motion to reconsider is denied as moot.  *See Meserole v. Sony Corp. of Am*., 08 CV. 8987, 2009 WL 2001451, at *1 (S.D.N.Y. July 9, 2009) (reasoning that, if the Court were to grant the plaintiff's motion to reconsider after the filing of an amended complaint, that would result in two complaints pending in the same action); *see also Greenblatt v. Gluck*, 265 F.Supp.2d 346, 351 (S.D.N.Y. 2003) ("[e]ven if the motion were to be granted, [the plaintiff] has already filed a new complaint, such that the prior complaint could not in any case be reinstated.").

3

## III.   SUFFICIENCY OF SECOND AMENDED COMPLAINT

### A.  Legal Standard

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the October 2025 Order and will not be restated in this Decision and Order.  *See* Dkt. No. 16 at 3-5.

### B.  Summary of Second Amended Complaint[1]

With the second amended complaint, previously dismissed plaintiffs Khan, Medhi, Adeyoye, and Odafe, are listed as plaintiffs in the caption.  *See* Sec. Am. Compl. at pp. 2, 4. Plaintiffs reassert claims against Bradford, Collins, Gale, Mann, Corlew, Tanzer, Johnson, Sidiq, Marsicano, and Maxwell and also identified the following previously dismissed defendants as defendants in the caption and list of parties: Great Meadow C.F. Superintendent Corey ("Corey"), Great Meadow C.F. Deputy Superintendent Caringi ("Caringi"), Great Meadow C.F. Deputy Superintendent Ryan Montgomery ("Montgomery"), Corrections Officer Farrow ("Farrow"), Office of Mental Health ("OMH") Clinician L. Walters ("Walters"), Nurse Rocque ("Rocque"), Corrections Officer K. Wood ("Wood"), Media Review

---

[1]   In the October 2025 Order, the Court noted that plaintiffs provided exhibits relevant to the incidents described in the amended complaint.  *See* Dkt. Nos. 2-1 and 3.   The Court considered the documents in the context of the § 1915 review.  *See* Dkt. No. 16 at 5, n.1.  Plaintiffs did not attach the exhibits to the second amended complaint.  "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint."  *Wellington v. Langendorf*, No. 12 CV 1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013).  To require plaintiff to file an amended complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action."  *Alexander v. U.S.,*  No. 13 CV 678, 2013 WL 4014539, at *4 (N.D.Cal. Aug. 5, 2013).  Because plaintiffs are pro se, the Court will consider the documentation attached to the amended complaint as incorporated by reference in the second amended complaint.  Additionally, with the second amended complaint, plaintiffs provided additional exhibits.  *See* Dkt. Nos. 26 and 28-1.  To the extent that the exhibits are relevant to the incidents described in the second amended complaint, the Court will consider the documents attached as exhibits.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

4

Committee Jason Hoagland ("Hoagland"), Senior Counselor Green ("Green"), Senior Counselor Zimmerman ("S.C. Zimmerman"), ORC Counsel Bernard ("Bernard"), ORC Counselor Weir ("Weir"), ORC Counselor M. Brace ("Brace"), FOIL Officer K. White ("White"), FOIL Officer K. Deluca ("Deluca"), OMH Clinician R. Thomas ("Thomas"), OMH Unit Chief D. Wiktorko ("Wiktorko"), ORC Counselor Diego ("Diego"), Corrections Officer Nelson ("Nelson"), FOIL Officer K. Smith ("Smith"), OMH Clinician Abetello ("Abetello"), Captain E.J. Meyers ("Meyers"), Assistant Director Matt Devane ("Devane"), Commissioners Hearing Officer B.N. Bauersfeld ("Bauersfeld"), Nurse Administrator Rebecca Brunelle ("Brunelle"), Officer Christopher Michael Dorrer ("Dorrer"), Deputy Randy J. Gross ("Gross"), Doctor Howard E. Silverberg ("Silverberg"), Sergeant Ralph J. Pisani ("Pisani"), Sergeant Kari A. Lovely ("Lovely"), Deputy Roy Baker ("Baker"), Officer Stephen L. Dodge ("Dodge"), Officer Jesse J. Carr ("Carr"), Lieutenant Francis M. Persutti ("Persutti"), Deputy Aaron J. Torres ("Torres"), JPay, Inc. ("JPay"), Commissioner Daniel Martuscello ("Martuscello"), Corrections Counselor Lawson ("Lawson"), Corrections Counselor White ("White"), Sergeant Rivers ("Rivers"), Deputy Commissioner Jeff McKoy ("McKoy"), Deputy Commissioner Jaifa Collado ("Collado"), Deputy Commissioner Melissa Coolidge ("Coolidge"), Deputy Commissioner Darren Ayotte ("Ayotte"), Central Officer Director of Movement and Control, Supervisor Ben Ware ("Ware"), and Sergeant Maldonado ("Maldonado"). *See id*. at 2, 3-12. Plaintiffs also identified new defendants: Elmira C.F. Senior Counselor Allington ("Allington"), Elmira C.F. Deputy Abrams ("Abrams") and Elmira C.F. Superintendent McCarthy ("McCarthy").[2] *See id.* at 2, 10.

### 1. Wende C.F.

---

[2]  The Clerk of the Court is directed to add these defendants to the Docket Report.

5

On July 30, 2018, Devane and Meyers informed N. Zimmerman that "his company," Madison Avenue Entertainment Group, was placed on the "Negative Vendors List." Sec. Am. Compl. at ¶¶ 12-16. N. Zimmerman responded with a letter and advised he was "not the registered legal owner" of the company. *Id.* Plaintiffs contend that it is D. Zimmerman's "company." *Id.*

### 2.  Auburn Correctional Facility ("Auburn C.F.")

On June 3, 2021, N. Zimmerman told Thomas that he intended to file a lawsuit against her because Thomas released plaintiff from a suicide prevention observation cell "on three occasions although [he] told her [he] was still contemplating suicide." Sec. Am. Compl. at ¶¶ 17-20. The first time Thomas released plaintiff, he told her he was planning to commit suicide because "DOCCS kept moving [him] away from family." *Id*. Thomas told plaintiff that "was not a good enough reason" to commit suicide and that he could not "just hang out" in the suicide unit because he did not like his facility. *Id.* Plaintiff asked to be released so he could "go back to his cell and kill himself" and Thomas responded, "OK." *Id.* When plaintiff arrived at his cell, an officer searched his belongings and discovered a "noose." Sec. Am. Compl. at ¶¶ 17-20. Plaintiff was sent back to the suicide unit. *Id*. The next day, Thomas immediately told officers plaintiff should "not be there" and released him without an interview. *Id*. Plaintiff returned to his cell. *Id.*

Plaintiff "ended up" in the suicide unit a third time. Sec. Am. Compl. at ¶ 20. Plaintiff told Thomas that he was suicidal and Thomas sent him back to his cell and issued a misbehavior report charging plaintiff with threats, harassment, and interference. *Id*. at ¶¶17-20, 29.

6

On June 11, 2021, Bauersfeld found N. Zimmerman guilty of the charges in the misbehavior report and sentenced plaintiff to six months in solitary confinement. Sec. Am. Compl. at ¶ 18. During the hearing, Bauersfeld "coached" Thomas through her testimony. *Id*.

In December 2021, plaintiff asked Diego for a transfer from Auburn C.F. to a facility closer to his family in Buffalo, New York. Sec. Am. Compl. at ¶¶ 220-250. Diego transferred plaintiff to Great Meadow C.F., three hours further from his family. *Id*.

### 3. Great Meadow C.F.

In October 2021, N. Zimmerman arrived at the Special Housing Unit ("SHU") at Great Meadow C.F. Sec. Am. Compl. at ¶ 57. At that time, there was "an unwritten policy" that prisoners must come out of their cell in only a "state issued green towel" if they wanted to go to the shower. *Id*. at ¶¶ 57-61, 95, 100. The policy was unrelated to security, and done to harass, intimidate, embarrass, or punish plaintiff for sexual gratification of officers. *Id*. at ¶ 103.

Because SHU inmates were handcuffed behind their back when they left their cells, often times, the towel would "unfasten and fall down." *Id*. "On numerous occasions," N. Zimmerman's towel fell, leaving him naked in front of the prisoners and female guards, civilian staff, and maintenance workers subjecting him to "laughter." *Id*. This continued for one year. Sec. Am. Compl. at ¶¶ 57-61, 95, 100.

On four occasions, N. Zimmerman verbally complained to Corey and Collins about the policy that was enforced by Nelson. Sec. Am. Compl. at ¶¶ 57-61, 95, 100. Defendants refused to intervene and stated, "that is my policy, and my policy stands." *Id*. N. Zimmerman

7

also "raised the same issues" with Bradford and Caringi.  *Id*.  Defendants "kept the same policies in place."  *Id.*

On July 19, 2022, at approximately 8:00 p.m., N. Zimmerman informed Johnson that he was having an anxiety attack and suffering chest pains.  Sec. Am. Compl. at ¶¶ 104-105. Johnson ignored plaintiff and was overheard saying, "just let that rat die in his cell."  *Id*. The next morning, Johnson issued a misbehavior report charging plaintiff with an unauthorized exchange with another inmate.  *Id.*  Johnson told a porter that he "only wrote the ticket" because N. Zimmerman "was having a heart attack."  *Id.*

In August 2022, an email account on JPay.com, associated with Madison Avenue Entertainment Group, was closed, at Bradford's direction.  Sec. Am. Compl. at ¶¶ 109-115.

On December 4, 2022, N. Zimmerman asked Sidiq for mental health treatment.  Sec. Am. Compl. at ¶¶ 106-108.  Plaintiff told Sidiq he was feeling suicidal and asked to stay in an observation cell.  *Id*.  Sidiq yelled, "I have some extra rope if you need it."  *Id*.  The same evening, plaintiff informed Mann that he was feeling suicidal.  *Id.*  Mann told plaintiff she would take him to an observation cell, but she never returned.  *Id.*  The next morning, plaintiff asked another officer to be placed in an observation cell. Sec. Am. Compl. at ¶¶ 106-108. The officer told plaintiff to "write a letter," if he was suicidal.  *Id.*  Gale overheard the conversation but refused to send plaintiff to the mental health unit.  *Id*.  Later the same day, plaintiff asked Corlew why he didn't call "mental health" and Corlew responded, "that was you? I didn't hear none [sic] of that."  *Id*.

On December 28, 2022, Tanzer placed N. Zimmerman in a cell with feces on the wall, in the sink, in the toilet, on the mattress, and on the bedframe.  Sec. Am. Compl. at ¶¶ 116-136.  Plaintiff remained in that cell for 21 days.  *Id*.  During that time, Farrow was the "A-Man"

responsible for the block. *Id*. Plaintiff "repeatedly" complained to Farrow about the conditions. *Id*. Farrow indicated that he would "call movement and control." *Id*. However, he did not move plaintiff from the cell. Sec. Am. Compl. at ¶¶ 116-136.

Gale was Tanzer's supervisor during his 21-day confinement. Sec. Am. Compl. at ¶ 123. N. Zimmerman "had daily conversations with Gale (sometimes two or three times a day) about the nature of the cell while Gale stood "in front of the cell." *Id*. Gale responded, "I am looking into this" and eventually directed Tanzer to provide cleaning supplies. *Id.*

During that 21-day period, N. Zimmerman was admitted to the Mental Health Unit ("MHU"). Sec. Am. Compl. at ¶ 120. While plaintiff was in the "screening process" at the MHU, Abetello and Walters asked him why he was feeling suicidal. *Id.* Plaintiff explained that it was due to the conditions of his cell including the feces on the wall, toilet, and sink. *Id*. at ¶ 121. N. Zimmerman "asked them several times" to bring this issue to the attention of Wiktorko. *Id*. at ¶ 122. Abetello and Walters told plaintiff that was not a mental health related issue so they would not report it. Sec. Am. Compl. at ¶ 122. After two days in the observation unit, plaintiff was returned to the same cell. *Id.*

N. Zimmerman wrote a formal complaint and sent a copy to Collins and Rocque and asked for "someone [to] take pictures of the cell to verify its conditions." Sec. Am. Compl. at ¶ 124. Plaintiff's request was ignored. *Id*. Rocque called plaintiff to the infirmary to check his blood pressure and he told her "everything he had told everyone else about the conditions of the cell." *Id*. Rocque told plaintiff there was nothing she could do because it was not medically related. *Id*. In total, plaintiff forwarded nine letters to Collins. *Id.*

9

During the 21-day time frame that N. Zimmerman was housed in this cell, he told Rocque that he was on a hunger strike. Sec. Am. Compl. at ¶¶ 131-136. Rocque refused to admit him to the infirmary or check his vital signs. *Id.*

In February 2023, Collins "approved the denial of an email" from Medhi to N. Zimmerman because it "included four videos that had advertisements" related to N. Zimmerman's "commercial album." Sec. Am. Compl. at ¶ 144. In total, Bradford, Collins, and McCarthy refused to allow plaintiffs to send/receive emails on 201 occasions. *Id*. at ¶¶199-209; Dkt. No. 28-1.

In March 2023, Ware assigned N. Zimmerman to a "photographer job." Sec. Am. Compl. at ¶ 212-219. Maldonado directed Ware to "fire" plaintiff "solely because of his history as a litigator." *Id.*

In April 2023, at the direction of Collins and Montgomery, N. Zimmerman was housed in A-Block with the "worst of the worst" prisoners, as a form of punishment and retaliation for "years of advocacy and litigation against DOCCS." Sec. Am. Compl. at ¶¶ 277-284. Plaintiff wrote to Collins complaining about the situation in A-Block, but Collins ignored plaintiff's complaints. *Id*.

On April 27, 2023, Collins directed defendant Marsicano to move N. Zimmerman to another cell in A-Block. Sec. Am. Compl. at ¶¶ 272-276. Marsicano harassed and threatened plaintiff. *Id*. Plaintiff told Marsicano that he was depressed and "felt" it would "lead [him] to commit suicide." *Id*. Marsicano restrained plaintiff and told him to wait in the hallway for a mental health clinician. *Id*. While they waited, Marsicano continued to tease and harass him. Sec. Am. Compl. at ¶¶ 272-276. The next day, Marsicano issued a misbehavior report charging plaintiff with creating a disturbance and refusing an order. *Id.*

In April 2023 and May 2023, Wood and Hoagland refused to allow N. Zimmerman to receive publications from D. Zimmerman, Medhi, and Adeyoye, including Kreame Magazine and a catalog issued by the Madison Avenue Entertainment Group. Sec. Am. Compl. at ¶¶ 251-270.

On June 20, 2023, N. Zimmerman was moved to D-Block. Sec. Am. Compl. at ¶¶ 285-319. Dorrer yelled at plaintiff for "taking too long" to pack his property. *Id*. Dorrer threatened to "throw some of [plaintiff's] property away." *Id*. Later the same day, when plaintiff unpacked, he noticed that an entire bag was missing. *Id.* On June 21, 2023, plaintiff filed "legal notice" with Collins, Montgomery, Torres, Wiktorko, Walters, White, Gross, and Baker informing them that Dorrer stole his property. *Id.* Pisani and Montgomery interviewed plaintiff about his missing property, but never acted and plaintiff's property was not returned. *Id*.

On June 21, 2023, N. Zimmerman commenced a hunger strike. Sec. Am. Compl. at ¶¶ 291-292. On June 23, 2023, plaintiff was given a "pass" to see Walters about his hunger strike, but Walters refused to see plaintiff. *Id*. The same day, plaintiff told Torres that he was on a hunger strike, but Torres refused to "report it to medical." *Id*.

On June 26, 2023, N. Zimmerman was in the infirmary and told Smith that he was on a hunger strike. Sec. Am. Compl. at ¶293. Maxwell intervened and told plaintiff to "follow protocol" and report it to his "company officer." *Id*. Plaintiff explained that he had tried to do that but Maxwell ignored him and directed him to return to his block. *Id.*

On June 30, 2023, N. Zimmerman was called to the infirmary to see Silverberg. Sec. Am. Compl. at ¶¶ 300-306. Silverberg refused to address the hunger strike and asked to

11

"take his vitals." *Id.* When plaintiff told Silverberg he would contact the medical board, Silverberg "started the hunger strike procedures." *Id.*

When N. Zimmerman returned to his cell, it was "ransacked." Sec. Am. Compl. at ¶¶ 309-312. Plaintiff's legal work and books were destroyed, his bed was on the floor and covered with muddy boot stains, his floor was covered with sugar and rice and his medication was missing. *Id.* Dodge conducted the search at the direction of Montgomery in retaliation for plaintiff exercising his rights "in trying to hunger strike." *Id.* On July 8, 2023, Dodge issued a misbehavior report charging plaintiff with possessing gang materials. *Id.*

On July 17, 2023, N. Zimmerman experienced excruciating back pain as a result of Dodge confiscating his medicine. Sec. Am. Compl. at ¶¶ 320-341. At 6:00 p.m., plaintiff was summoned to attend a disciplinary hearing, held by Persutti, related to Dodge's misbehavior report. *Id.* Plaintiff was "slumped over in a chair crying in pain." *Id.* Plaintiff requested an adjournment due to his back pain, but Persutti refused. *Id.* Dodge was aware of plaintiff's back pain because he stole plaintiff's back medication from his cell. Sec. Am. Compl. at ¶¶ 320-341. On the hearing disposition sheet, Persutti wrote, "unable to sign for medical reasons." *Id.*

Persutti found N. Zimmerman guilty and sentenced him to a "loss of packages" for twenty days. Sec. Am. Compl. at ¶¶ 320-341. At the conclusion of the hearing, plaintiff asked Persutti to call medical before he returned to his cell, but Persutti refused and directed plaintiff to return to his cell. *Id.*

On July 18, 2023, Maxwell summoned N. Zimmerman to the infirmary but, when he arrived, she refused to treat him. Sec. Am. Compl. at ¶¶ 320-341. Plaintiff realized that Maxwell summoned him so he "could walk in pain, there and back, with no medical

12

assistance." *Id.* Later the same day, Lovely and Maxwell came to plaintiff's cell. *Id.* Plaintiff was "slumped over, facing the floor, and crying in pain." *Id.* Maxwell, plaintiff's "steady nurse," informed Lovely that plaintiff suffered from a back injury and whispered to Lovely that plaintiff was "faking." Sec. Am. Compl. at ¶¶ 320-341. Defendants forced plaintiff to walk ½ mile to the medical unit, rather than provide a wheelchair in retaliation for asking for medical assistance. *Id.* Defendants were aware of plaintiff's back injury because Maxwell told Lovely that plaintiff was waiting for a refill of Ibuprofen. *Id.*

Maxwell issued a false misbehavior report charging plaintiff with violating rules related to "false alarm." Sec. Am. Compl. at ¶¶ 320-341. Persutti presided over a disciplinary hearing related to the report. *Id.* Plaintiff asked to call witnesses and review video surveillance. *Id.* Persutti refused the requests, but dismissed the charges. *Id.* Plaintiff asked Persutti to refer him to medical, but Persutti refused. Sec. Am. Compl. at ¶¶ 320-341

Beginning in April 2024, inmates were limited to one hour of recreation during the weekend. Sec. Am. Compl. at ¶¶ 342-357. On June 17, 2024, at 12:30 p.m., N. Zimmerman addressed the issue with Montgomery and Collins. *Id.* Montgomery told plaintiff it was due to "short staffing." *Id.* Collins and Montgomery instructed the grievance supervisor to not file any grievances related to the issue, but received notice at the July 2024 Inmate Liaison Committee hearing. *Id.* at 358. Martuscello was aware of the "policy" and McCoy was informed by "outside advocates and organizations." *Id.* at 359-360.

On July 18, 2024, DOCCS announced that Great Meadow C.F. would be closing. Sec. Am. Compl. at ¶¶ 425-433.

On August 5, 2024, N. Zimmerman filed a grievance against Brace because she refused to meet with him concerning his "close proximity status." Sec. Am. Compl. at ¶¶ 425-

13

453, 470.  On August 7, 2024, Brace met with plaintiff and plaintiff requested to be housed at Shawangunk C.F., ninety minutes from Schenectady.  *Id*.  Brace initially agreed, but then changed plaintiff's transfer request to Coxsackie C.F., "possibly because Coxsackie is 45 minutes from Schenectady."  *Id*.

Between October 14, 2024 and October 24, 2024, only ten prisoners remained at Great Meadow C.F.  Sec. Am. Compl. at ¶¶ 427-433.  On October 21, 2024, plaintiff posted a podcast entitled "Ten Remaining Prisoners Being Held at Great Meadow" on his social media platforms.  Sec. Am. Compl. at ¶¶ 462-463.  On October 24, 2024, Rivers "picked up" plaintiff for his transfer from Great Meadow C.F.  *Id*.  Rivers stated, "you're going far away from this jail."  *Id*.  Without any prior notice, plaintiff was transferred to Elmira C.F., three and a half hours from his family.  Sec. Am. Compl. at ¶¶ 427-433.

In October 2024 and November 2024, D. Zimmerman sent emails to Martuscello, Brace, and Collado related to N. Zimmerman's close proximity status and with concerns regarding his safety at Great Meadow C.F. and Elmira C.F.  Sec. Am. Compl. at ¶ 457, Dkt. No. 26-1 at 2; Dkt. No. 26-2; Dkt. No. 26-3 at 1; Dkt. No. 26-4.  On October 8, 2024, Collado responded that the Superintendent approved her visit with her children at Great Meadow C.F. Dkt. No. 26-1 at 2.  On October 22, 2024, Collado responded that N. Zimmerman would be transferred "soon."  Dkt. No. 26-3 at 1.  On November 4, 2024, Collado responded that N. Zimmerman "was fine" at Elmira C.F. but failed to address the issues regarding close proximity.  Sec. Am. Compl. at 458-459; Dkt. No. 26-4 at 2.

### 4. Elmira C.F.

When N. Zimmerman arrived at Elmira C.F., he was placed in the SHU.  Sec. Am. Compl. at ¶¶ 567, 629-634.  Plaintiff filed a grievance claiming his transfer was "retaliatory"

14

and a separate grievance regarding the loss/delay of delivery of his property. *Id*. at ¶ 431. Lawson, White, Allington, and Abrams refused to submit plaintiff's transfer request and refused to locate plaintiff's missing property. *Id.* at ¶¶ 451, 565.

For a complete statement of plaintiff's claims and the facts he relies on in support of those claims, reference is made to the second amended complaint.

## C. Analysis

### 1. Severance and Transfer of Claims Related to Wende C.F. and Elmira C.F.

The law related to Rule 21 of the Federal Rules of Civil Procedure was discussed in the October 2025 Order and will not be restated herein. *See* Dkt. No. 16 at 15-16. In the October 2025 Order, the Court severed and transferred plaintiffs' claims related to incidents that occurred at Wende C.F. and Elmira C.F. to the Western District. *See id.* For the reasons set forth in the October 2025 Order, the claims in the second amended complaint that arose at Wende C.F. and Elmira C.F. in the Western District, along with the defendants associated with those claims, are severed from this action, and transferred to the Western District. Thus, Meyers, Devane, Lawson, White, Allington, Abrams, and McCarthy and all claims against them, will be severed and transferred to the Western District.

### 2. Eleventh Amendment

The law related to the Eleventh Amendment was discussed in the October 2025 Order and will not be restated herein. Dkt. No. 16 at 16-17. In the October 2025 Order, the Court dismissed plaintiffs' §1983 claims for monetary damages against defendants in their official capacity as barred by the Eleventh Amendment. *See id*. To the extent that plaintiffs attempt to reassert these claims, the claims are dismissed for the reasons set forth in the October 2025 Order.

### 3. Claims Against JPay, Deluca, and Carr

In the October 2025 Order, the Court dismissed plaintiffs' claims against JPay reasoning, "[e]ven if the Court were to assume, for purposes of this Decision and Order, that JPay, was a state actor, the amended complaint does not suggest that JPay had any decision- making authority with respect to the tablet systems." Dkt. No. 16 at 20. Despite being afforded an opportunity to amend the pleading, the second amended complaint lacks any facts that would support a § 1983 claim against JPay. Thus, for the reasons set forth in the October 2025 Order, these claims are dismissed.

Deluca and Carr are named as defendants in the caption and list of parties, these individuals are not mentioned in the body of the second amended complaint. Indeed, the second amended complaint does not contain any allegations that would allow this Court to infer that these defendants were personally involved in decisions related to N. Zimmerman's confinement. In the absence of factual allegations sufficient to plausibly suggest that defendants were personally involved in conduct that violated plaintiffs' constitutional rights, the complaint fails to state a cognizable claim against them. *See Cipriani v. Buffardi*, No. 06– CV–0889 (GTS/DRH), 2007 WL 607341, *1 (N.D.N.Y. Feb. 20, 2007) ("Dismissal is appropriate where a defendant is listed in the caption, but the body of the complaint fails to indicate what the defendant did to the plaintiff.") (citation omitted); *see also Casino v. Rohl*, No. 14-CV-2175, 2014 WL 5425501, at *6 (E.D.N.Y. Oct. 23, 2014) (dismissing complaint since the plaintiff had not adequately pled the defendant's personal involvement in any of the constitutional deprivations alleged in the amended complaint).

### 4. First Amendment -  Freedom to Conduct Business and Solicit Prisoners

16

In the October 2025 Order, the Court directed Bradford to respond to D. Zimmerman's First Amendment claims.  *See* Dkt. No. 16 at 20.  Those claims are repeated and realleged in the second amended complaint.  For the reasons set forth in the October 2025 Order, defendant is directed to respond to these claims.

### 5.  First Amendment - Freedom to Associate/Communicate

The law related to First Amendment freedom to associate/communicate was discussed in the October 2025 Order and will not be restated herein.  *See* Dkt. No. 16 at 21-22.

In the October 2025 Order, the Court dismissed plaintiffs' First Amendment claims against Bradford, Collins, Wood, and Hoagland reasoning:

> Plaintiffs' allegations related to their ability to associate and communicate are vague and non-specific.  To wit, plaintiffs' claim that defendants "directed, encouraged, and/or allowed their employees" to "deny[ ] incoming and outgoing communications" between plaintiffs, but the pleading lacks any facts related to when, how, and how often defendants acted in such a manner.  There are no facts related to who attempted to communicate with whom, when or how plaintiffs were prevented from associating or communicating, and how often.  Moreover, while plaintiffs claim defendants interfered with their ability to email each other and prevented N. Zimmerman from receiving certain publications, plaintiffs have not plead that defendants impeded all access to communicate.  Indeed, plaintiffs do not suggest that they were prevented from visiting, telephoning, or writing letters.  *See Sharifi v. Dunn*, No. CV 21-00552, 2024 WL 1422656, at *4 (S.D. Ala. Mar. 6, 2024) (noting that courts have "found no constitutional violation to an inmate's First Amendment rights where there remains some access to an inmate's ability to communicate with friends and family generally"), *report and recommendation adopted*, 2024 WL 1417961 (S.D. Ala. Apr. 2, 2024).  More importantly, plaintiffs have not alleged any facts to suggest that any named defendant was personally involved in decisions related to plaintiffs' communication.

Dkt. No. 16 at 21-22.

With the second amended complaint, plaintiffs provide additional facts to support their claim that Hoagland and Woods were personally involved in the denial of publications. *See* Sec. Am. Compl. at ¶ 262. Plaintiffs also provided additional factual allegations related to the denials of their emails. *See id*. at ¶¶199-209; Dkt. No. 28-1.

However, even with these additional facts, the Court finds that the second amended complaint does not cure the deficiencies, addressed in the October 2025 Order, with respect to the First Amendment association claims. "Although prison inmates retain a right under the First Amendment to send and receive information while incarcerated, they do not have a constitutional right to a particular form of communication, including access to the internet or email." *Edwards v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:19-CV-0254 (MAD/ATB), 2019 WL 1978803, at *5 (N.D.N.Y. May 3, 2019) (internal citations and citations omitted).

Thus, for the reasons set forth in the October 2025 Order and herein, plaintiffs' First Amendment freedom of association claims are dismissed.

### 6. Eighth Amendment – Deliberate Medical Indifference

The law related to Eighth Amendment deliberate medical indifference claims was discussed in the October 2025 Order and will not be restated herein. *See* Dkt. No. 16 at 22-23.

### a. Claims Related to Suicide Watch

In the October 2025 Order, the Court dismissed N. Zimmerman's claims against Thomas related to plaintiff's release from suicide watch. The Court held:

> The pleading, however, lacks facts related to the date, time, or circumstances surrounding plaintiff's release. Without these facts, the Court cannot infer that Thomas acted deliberately and

18

> disregarded plaintiff's serious condition.  Thus, the subjective prong of the Eighth Amendment claim is not satisfied.

Dkt. No. 16 at 24.  The Court also noted that, even if the claims were sufficiently pled, the claims were subject to dismissal due to the applicable statute of limitations.  *Id*. at 24, n.8.

With the second amended complaint, plaintiffs provided additional information related to the circumstances surrounding N. Zimmerman's release from the mental health unit.  Sec. Am. Compl. at ¶¶ 20(b) – 20(f).  However, even assuming that N. Zimmerman pled a colorable Eighth Amendment claim, the claim is subject to dismissal as untimely.

The law related to the applicable statute of limitations was discussed in the October 2025 Order.  *See* Dkt. No. 16 at 39-42.  As noted in the October 2025 Order, the complaint was filed on April 7, 2025.  *Id*. at 40.  Therefore, the Court reasoned, "in the absence of some basis for tolling or disregarding the limitations period, any claim that accrued before April 7, 2022 is subject to dismissal."  *Id*. at 40-41.

"A claim for deliberate medical indifference accrues when medical treatment is denied."  *Santos v. Deborah Geer, P.A*., No. 9:20-CV-0421 (LEK/DJS), 2020 WL 5525177, at *2 (N.D.N.Y. Sept. 15, 2020) (citations omitted).   Here, plaintiff's claims against Thomas arise from plaintiff's release from the mental health unit in 2021.  Plaintiff alleges that defendant's response to his suicidal ideations was inadequate, at that time.  Thus, plaintiff's deliberate medical indifference claims accrued in 2021.  *See id.*

In the October 2025 Order, plaintiffs were directed to provide facts that would demonstrate that the limitations period, was tolled or an explanation as to why certain claims are timely.  *See* Dkt. No. 16 at 41.  Notably absent from the pleading are any allegations, facts, or explanations related to the timeliness of plaintiff's deliberate medical indifference claims.

19

Accordingly, for the reasons set forth in the October 2025 Order and herein, plaintiff's deliberate medical indifference claims against Thomas are dismissed.

### b.  Claims Against Sidiq, Mann, Corlew, and Gale

In the October 2025 Order, the Court directed Sidiq, Mann, Corlew, and Gale to respond to N. Zimmerman's deliberate medical indifference claims.  *See* Dkt. No. 16 at 24.  Those claims are repeated and realleged in the second amended complaint.  For the reasons set forth in the October 2025 Order, defendants are directed to respond to these claims.

### c.  Claims Against Johnson

In the October 2025 Order, the Court directed Johnson to respond to N. Zimmerman's deliberate medical indifference claims.  *See* Dkt. No. 16 at 24.  Those claims are repeated and realleged in the second amended complaint.  For the reasons set forth in the October 2025 Order, defendant is directed to respond to these claims.

### d.  Hunger Strikes

In the October 2025 Order, the Court dismissed N. Zimmerman's deliberate medical indifference claims related to hunger strikes holding:

> plaintiff made the conscious decision to commence a hunger strike and does not allege that he suffered from any serious injury, weight loss, or any serious medical need as a result of his decision not to consume food.
>
> Accordingly, his claims related to medical treatment for a hunger strike are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.  *See Green v. Phillips*, No. 04 CIV. 10202, 2006 WL 846272, at *5 (S.D.N.Y. Mar. 31, 2006) (dismissing Eighth Amendment claim because plaintiff chose to go on the hunger strike and failed to allege that he suffered from symptoms beyond what was to be expected by someone who does not eat for three days).

Dkt. No. 16 at 25.

20

While N. Zimmerman was provided with an opportunity to amend the pleading, the second amended complaint does not cure the deficiencies, addressed in the October 2025 Order, with respect to these claims. Thus, for the reasons set forth in the October 2025 Order, N. Zimmerman's claims related to hunger strikes are dismissed.

### e. Claims Related to Back Pain

In the October 2025 Order, the Court dismissed claims related to N. Zimmerman's back pain noting "there are no facts suggesting that Dodge, Persutti, Lovely, or Maxwell were aware that plaintiff suffered from a serious medical need related to his back and deliberately deprived plaintiff of the medication or proper treatment." Dkt. No. 16 at 26.

With the second amended complaint, N. Zimmerman alleges that he was "slumped over in his chair" and "crying in pain" in Persutti's presence. Sec. Am. Compl. at ¶¶ 320-341. Furthermore, Persutti noted that plaintiff could not sign the hearing disposition due to "medical reasons." *Id.* Plaintiff claims that Dodge was aware of the seriousness of his back pain because he stole plaintiff's back medication from his cell. *Id.* Finally, plaintiff claims that Lovely and Maxwell, his "steady nurse," were at his cell while he was "slumped over, facing the floor, and crying in pain." *Id.*

At this juncture, the Court finds that N. Zimmerman has pled a colorable Eighth Amendment claim against Dodge, Persutti, Lovely, and Maxwell related to his back pain. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 7. Eighth Amendment – Conditions of Confinement

The law related to Eighth Amendment condition-of-confinement claims was discussed in the October 2025 Order and will not be restated herein. *See* Dkt. No. 16 at 26-27.

### a. Claims Related to Unhygienic Cell

In the October 2025 Order, the Court directed Tanzer and Collins to respond to N. Zimmerman's Eighth Amendment claims related to his confinement in an unhygienic cell. *See* Dkt. No. 16 at 27.  These claims are repeated and realleged in the second amended complaint.   For the reasons set forth in the October 2025 Order, defendants are directed to respond to these claims.

In the October 2025 Order, the Court reached a different conclusion with respect to the claims against Walters, Abetello, Rocque, Gale, and Wiktorko because the pleading lacked facts related to how and when plaintiff "brought the issue" to their attention.  Dkt. No. 16 at 27.

With the second amended complaint, N. Zimmerman claims that Farrow was aware of the conditions in the cell because he was the "A-Man" or the officer responsible for the block during the 21-day time frame plaintiff was confined to the cell.  Sec. Am. Compl. at ¶ 136. Plaintiff claims that he "repeatedly told him about the conditions."  *Id*.  Plaintiff also alleges he told Abetello and Walters about the conditions of his cell when he was admitted to the MHU. *Id*. at ¶¶ 120-122.  At this juncture, the Court finds that N. Zimmerman has pled a colorable Eighth Amendment claim against Farrow, Gale, Walters, Rocque, and Abetello related to his back pain.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

With respect to Wiktorko, the Court finds that the second amended pleading does not remedy the deficiencies addressed in the October 2025 Order.  Accordingly, for the reasons set forth in that Order, the Eighth Amendment claims against this defendant are dismissed.

### b.  Transfer

22

In the October 2025 Order, the Court dismissed plaintiffs' constitutional claims related to defendants' refusal to acknowledge N. Zimmerman's "close proximity" status because "prisoners have no constitutional right in being housed at a particular correctional facility." Dkt. No. 16 at 28.  To the extent that these claims are repeated and realleged in the second amended complaint, the claims are dismissed for the reasons set forth in the October 2025 Order.

### c. Recreation

In the October 2025 Order, the Court dismissed N. Zimmerman's claims related to his limited recreation due to the failure to allege personal involvement.  Dkt. No. 16 at 28.

With the second amended complaint, plaintiff attempts to remedy the deficiencies in this claim and alleges that Collins and Montgomery were personally involved because they instructed the grievance supervisor not to file any of plaintiff's grievances.  Sec. Am. Compl. at ¶ 358.  Further, plaintiff alleges that Martuscello was involved because of policy and that McCoy was personally involved because he was informed by "outside advocates and organizations."  *Id*. at 359-360.

Upon review, the Court finds that plaintiffs' new allegations do not support Eighth Amendment claims against these defendants.  Initially, the Court notes that the pleading lacks any facts related to N. Zimmerman's grievances including the date and substance of the complaints or any facts indicating when and how Collins and Montgomery became aware of the grievances or when and how they instructed the unknown grievance supervisor to refrain from accepting the complaints.  With respect to Martuscello, courts in this District have found that "an official's conduct in making and executing policy, [. . .], may satisfy *Iqbal's* requirement of personal involvement if such conduct meets the elements required to

23

establish an underlying constitutional violation and is undertaken with the required state of mind." *Lalonde v. City of Ogdensburg*, No. 8:22-CV-0164 (LEK/DJS), 2023 WL 2537626, at *18 (N.D.N.Y. Mar. 16, 2023) (citation omitted).  To establish a policy-maker's personal involvement, the plaintiff must allege that the official was responsible for the policy and a "tangible connection between their policymaking conduct and the alleged harm." *Id*. at *18 (citation omitted).  Policymakers may be liable because "[a]n individual who creates a policy or custom whereby the constitution is violated . . . is more directly and personally involved in the constitutional violation than someone who is only negligent in his supervision of the official committing the underlying offense." *Stone #1 v. Annucci*, No. 20-CV-1326, 2021 WL 4463033, at *6-8 (S.D.N.Y. Sept. 28, 2021).  Here, plaintiff's conclusory allegations related to policies do not suggest that defendant was personally involved in any conduct that violated plaintiff's constitutional rights.  *See Williams v. Koenigsmann*, No. 9:21-CV-0302 (TJM/CFH), 2022 WL 7288515, at *8 (N.D.N.Y. May 6, 2022) (reasoning that the plaintiff's conclusory allegation of any unconstitutional policy or custom failed to raise an issue of fact with respect to personal involvement) (citations omitted), *report and recommendation adopted*, 2022 WL 4363994 (N.D.N.Y. Sept. 21, 2022).  Finally, plaintiff's allegation that McCoy was informed by unknown advocates/organizations is not supported by facts related to when and how he was informed.

Accordingly, plaintiff's Eighth Amendment claims related to his recreation time are dismissed.

### 8.  First Amendment – Retaliation

#### a.  Claims Against Thomas, Johnson, Marsicano, and Maxwell

In the October 2025 Order, the Court directed Thomas, Johnson, Marsicano, and Maxwell to respond to plaintiff's retaliation claims.  *See* Dkt. No. 16 at 29.  These claims are repeated and realleged in the second amended complaint.   For the reasons set forth in the October 2025 Order, defendants are directed to respond to these claims.

### b.  Claims Related to Transfer/Close Proximity Status

In the October 2025 Order, the Court dismissed N. Zimmerman's retaliation claims related to his transfer to Elmira C.F.  Dkt. No. 16 at 31.  The Court held:

> Even assuming plaintiff engaged in protected conduct when he posted his podcast, the amended complaint is devoid of facts suggesting a causal connection between that conduct, adverse action, and the aforementioned defendants. Plaintiff claims that defendants did not answer calls or emails from him or his family related to the transfer.  *See id*. at ¶ 184. The pleading does not include any specific details related to these calls or emails.  Indeed, plaintiff concedes that Brace "possibly" changed his destination to Elmira C.F. but admits, "it is not clear which defendants are liable for what[.]"  *Id*. at ¶ 188.

Dkt. No. 16 at 31.

With the amended pleading, N. Zimmerman claims that he engaged in protected conduct when he filed a grievance against Brace in August 2024, posted his podcast on October 21, 2024, and corresponded, via email, with Martuscello, Brace, and Collado.  Sec. Am. Compl. at ¶¶ 434-435, 452, 462-470.  Plaintiff further claims that as a result of engaging in this protected conduct, defendants retaliated against him and transferred him to Elmira C.F.  *Id*.

At this juncture, the Court finds that N. Zimmerman has plead a retaliation claim against Martuscello and Collado.  In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.  However, with respect to Brace, the second amended complaint lacks facts suggesting that

Brace took any adverse action against plaintiff.  To wit, plaintiff asserts that Brace intended to transfer him to Coxsackie C.F., closer to his family than the facility that plaintiff initially suggested.

To the extent that plaintiff intended to assert retaliation claims related to his transfer to Elmira C.F. against Rivers, McCoy, Diego, Coolidge, Weir, Collins, Coolidge, Zimmerman, Green and Ayote, *see* Sec. Am. Compl. at ¶ 469, those claims are dismissed for failure to plead facts suggesting personal involvement.

### c.  Claims Against Ware, Maldonado, Collins, and Montgomery

N. Zimmerman claims that Ware, Maldonado, Collins, and Montgomery terminated plaintiff from this job and confined him to A-Block in retaliation for his "filing lawsuits," and "years of advocacy and a history as a litigator and advocate."  See Sec. Am. Compl. at ¶¶ 212-219, 277-284.  As noted in the October 2025 Order, "these conclusory allegations do not support a viable constitutional claim."  Dkt. No. 16 at 30.  While plaintiff was afforded an opportunity to provide additional information, the second amended complaint lacks facts related to lawsuits or specific facts connecting defendants and their actions to plaintiff's "years of advocacy" and "history as a litigator."

For the reasons set forth in the October 2025 Order, these retaliation claims are dismissed.

### d.  Claims Against Dodge and Montgomery Related to Hunger Strike

With the second amended complaint, N. Zimmerman claims that Dodge and Montgomery searched his cell and issued a misbehavior report in retaliation for plaintiff engaging in a hunger strike.  Sec. Am. Compl. at ¶¶ 309-312.  At this stage of the litigation, the Court directs Dodge and Montgomery to respond to plaintiff's retaliation claims.  *See*

26

*Brown v. Graham*, No. 9:07-CV-1353 (FJS/ATB), 2010 WL 6428251, at *16 (N.D.N.Y. Mar. 30, 2010) (reasoning that a hunger strike might be protected by the First Amendment if it was intended to convey a particularized message), *report and recommendation adopted*, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), *aff'd,* 470 F. App'x 11 (2d Cir. 2012*); Green v. Phillips*, No. 04 CIV. 10202, 2006 WL 846272, at *3 (S.D.N.Y. Mar. 31, 2006) ("the court will assume for the sake of argument that prison personnel do not have a right to retaliate against a prisoner who has been on a hunger strike"); *Smith v. New York*, No. 9:17-CV-558 (LEK/TWD), 2017 WL 6629228, at *12 (N.D.N.Y. Oct. 20, 2017), *on reconsideration in part sub nom. Smith v. New York State*, 2018 WL 346138 (N.D.N.Y. Jan. 10, 2018).

### 9.  Fourth Amendment - Privacy Claim

In the October 2025 Order, the Court dismissed plaintiff's privacy claims holding that prisoners do not have an expectation of privacy in showers, clinics, or other areas" where prison officials routinely search prisoners.  Dkt. No. 16 at 32-33.

With the second amended complaint, N. Zimmerman claims that "for one year while he was housed in F-Block SHU, he was forced to walk down a hallway to the shower in a "miniskirt" and handcuffed.  Sec. Am. Compl. at ¶¶ 95-103.  As a result, his "towel" would fall and he would be naked in front of prisoners and female guards, civilian staff, and maintenance workers subjecting him to "laughter."  *Id.*  Plaintiff also alleges that the policy was unrelated to security, and imposed as a means of harassing, intimidating, embarrassing or punishing plaintiff and for the sexual gratification of officers.  *Id*.

At this juncture, the Court finds that N. Zimmerman has plead a privacy claim against Bradford, Caringi, Corey, Nelson, and Collins.  In so ruling, the Court expresses no opinion

27

as to whether these claims can withstand a properly filed motion to dismiss or for summary judgment.

### 10. Fourteenth Amendment – Due Process

#### a. Bauersfeld

In the October 2025 Order, the Court found that N. Zimmerman sufficiently alleged a due process claim against Bauersfeld however, the Court found that the claim was not timely. Dkt. No. 16 at 35.  Plaintiff was afforded the opportunity to provide facts supporting tolling.  *Id.* at 42.

With the second amended complaint, plaintiff asserts that the due process claims against Bauersfeld are timely pursuant to the continuing violation doctrine because the guilty determination has been "used against plaintiff" on several occasions.  Sec. Am. Compl. at ¶¶ 21-23.  To wit, "the misbehavior report and the resulting finding of guilt" was used against plaintiff in 2024 when his application to the Family Reunion Program was denied, his request for a transfer was denied, and his request for a reduction in his sentence was denied.  *Id.* Plaintiff also claims the report and guilty findings were used in 2025 to deny plaintiff's request for parole.  *Id*.

As discussed in the October 2025 Order, the continuing violation doctrine does not apply to "discrete unlawful acts."  As such, "a continuing violation may not be based on the continuing effects of earlier unlawful conduct or on a completed unlawful act."  *Morrow v. Bauersfeld*, No. 9:19-CV-1628 (DNH/CFH), 2020 WL 3118520, at *3 (N.D.N.Y. June 12, 2020) (citing *McFadden v. Kralik*, No. 04-CV-8135, 2007 WL 924464, at *7 (S.D.N.Y. Mar. 28, 2007) (holding that continuing violation doctrine did not apply because plaintiff's due process claim arose from his disciplinary hearing, which constituted a discrete incident)).

Plaintiff also argues that equitable tolling applies because he appealed Bauersfeld's determination to the Director of SHU but never received a response and that he was appealing his administrative remedies. Sec. Am. Compl. at ¶¶ 47-51. However, "the law [i]s clear [. . .] that plaintiff did not have to wait until his disciplinary hearing was reversed in order to bring a due process claim regarding his disciplinary hearing. *See Mitchell v. Bell*, No. 9:04CV1490, 2006 WL 3043126, at *6 (N.D.N.Y. Oct. 23, 2006).

Plaintiff's remaining argument that his claims were tolled because he did not have his property when he was transferred to GMCF in October 2021 until March 2022, *see* Sec. Am. Compl. at ¶¶ 29-33, lack merit. A review of the Court's electronic filing system reveals that N. Zimmerman filed several submissions in an action in the Northern District of New York from January 2022 through March 2022. *See Zimmerman v. Brown, et al.*, No. 9:17-CV-0375 (CFH), Dkt. Nos. 103, 107. Plaintiff was "clearly not prevented from asserting his rights during the statute of limitations period" for his due process claims. *See Mitchell*, 2006 WL 3043126, at *6.

Accordingly, because plaintiff has failed to provide facts suggesting that the limitations period should be tolled or that his claims are otherwise timely, plaintiff's due process claims against Bauersfeld are dismissed.

### b. Persutti

In the October 2025 Order, the Court dismissed N. Zimmerman's due process claim against Persutti noting:

> the amended complaint lacks facts related to what sentence, if any, Persutti imposed at the completion of the hearing. Plaintiff has also failed to specify what, if any, witnesses or documents he requested during his hearing, why the testimony or evidence was necessary, and Persutti's response to those requests. The Court further notes

29

that Persutti presided over a second disciplinary hearing, but dismissed the charges at the end of the hearing.

Dkt. No. 16 at 35.

While plaintiffs were provided with an opportunity to amend the complaint, the second amended complaint does not cure the deficiencies, addressed in the October 2025 Order, with respect to this claim. Thus, for the reasons set forth in the October 2025 Order, the due process claim against Persutti is dismissed.

### c. Property Deprivation

In the October 2025 Order, the Court dismissed N. Zimmerman's Fourteenth Amendment claims related to his property noting that, "[b]ecause plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and therefore cannot state a claim for relief pursuant to Section 1983." Dkt. No. 16 at 33.

While plaintiffs were provided with an opportunity to amend the complaint, the second amended complaint does not cure the deficiencies, addressed in the October 2025 Order, with respect to this claim. Thus, for the reasons set forth in the October 2025 Order, the property claims are dismissed

### 11. Conspiracy

In the October 2025 Order, the Court dismissed plaintiffs' conspiracy claims holding:

> . . . plaintiffs do not assert facts giving rise to a conspiracy to deprive plaintiffs of their constitutional rights. There are no facts upon which it may be plausibly inferred that defendants came to an agreement, or a "meeting of the minds." *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding allegations of conspiracy "baseless" where the plaintiff "offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the conspirators"); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

Dkt. No. 16 at 37.

While plaintiffs were provided with an opportunity to amend the complaint, the second amended complaint does not cure the deficiencies, addressed in the October 2025 Order, with respect to this claim.  Thus, for the reasons set forth in the October 2025 Order, the conspiracy claims are dismissed.

### 12.  Violations of DOCCS' Directives

The law related to claims based upon defendants' violations of various DOCCS Directives was discussed in the October 2025 Order and will not be restated herein.  *See* Dkt. No. 16 at 37-38.  In the October 2025 Order, the Court dismissed the claims, without leave to amend.  *Id*.  To the extent that plaintiffs attempt to revive those claims, the claims are dismissed, for the reasons set forth in the October 2025 Order.

### 13.  HALT Act Claim

In the October 2025 Order, the Court dismissed the claim that defendants violated the HALT Act holding that a plaintiff cannot advance an independent claim predicated solely on the HALT Act.  Dkt. No. 16 at 39 (citing *Walker v. Velez*, No. 22 CV 7638, 2025 WL 2381701, at *6 (S.D.N.Y. Aug. 15, 2025).

With the second amended complaint, plaintiffs claim that Martuscello deprived him of the rights, privileges, and guarantees of the HALT Act because he was confined to his cell for 23 hours each day, for six months; from April 2024 until October 2024.  Sec. Am. Compl. at ¶¶ 461, 554, p. 125.  While plaintiffs dedicate several pages of the amended pleading to distinguishing *Walker v. Velez* from the facts surrounding this claim, those assertions do not support a viable claim against Martuscello.  To wit, the pleading lacks any facts suggesting

31

that Martuscello was personally involved in the decision to confine plaintiff to his cell for 23 hours each day, from April 2024 until September 2024.

### 14. Correction Law § 72-c

With the amended pleading, plaintiffs claim that defendants violated Corrections Law § 72-c.[3]  *See* Sec. Am. Compl. at ¶¶ 220-250.  Plaintiffs allege that, pursuant to Corrections Law § 72-c, the department shall consider an institution located in the closest proximity to an inmate's family.  *Id*.  N. Zimmerman also claims that he fulfilled the requirements of the law. *Id.*

Violations of New York's Corrections Law do not give rise to constitutional claims that are cognizable in this court under 42 U.S.C. § 1983.  *Jones v. Harris*, 665 F.Supp.2d 384, 404 (S.D.N.Y. 2009); *see also Snow v. Annucci*, No. 21-CV-0340-FPG, 2021 WL 1546148, at *3 (W.D.N.Y. Apr. 20, 2021) (dismissing the plaintiff's constitutional claim pursuant to New York Correction Law § 72) (citations omitted).

## IV.    CONCLUSION

**WHEREFORE, it is hereby**

**ORDERED** that plaintiff's motion for reconsideration (Dkt. No. 27) is **DENIED as moot**; and it is further

---

[3]  Correction Law § 72-c provides, in relevant part:

In determining placement for a person in custody of the department, whenever practicable the commissioner shall place such person in the correctional institution or facility which is located in closest proximity to the primary place of residence of such person's minor child or children as defined in subdivision thirty-one of section two of the social services law, provided that such placement is suitable and appropriate, would facilitate increased contact between such person and his or her child or children, is in the best interest of such child or children, and the incarcerated parent gives his or her consent to such placement.

**ORDERED** that the amended complaint (Dkt. No. 28) is **ACCEPTED** for filing; and it is further

**ORDERED** that the Clerk of the Court shall attach the submission at Dkt. No. 26 to the submission at Dkt. No. 28 and this shall constitute the operative pleading; and it is further

**ORDERED t**hat the Clerk of the Court shall add the following defendants to the Docket Report: Dodge, Persutti, Lovely, Farrow, Abetello, Walters, Rocque, Montgomery, Martuscello, Collado, Brace, Thomas, Nelson, Corey, Caringi, Allington, Abrams, and McCarthy; and it is further

**ORDERED** that pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a), all claims against Meyers, Devane, Lawson, White, Allington, Abrams, and McCarthy are severed and transferred to the Western District of New York; and it is further

**ORDERED** that no ruling is made as to the sufficiency of the claims that have been severed and transferred to the Western District, leaving that determination to the Western District of New York; and it is further

**ORDERED** that the Clerk shall advise the Clerk of the Western District of New York, in writing, of the entry of this Decision and Order and provide the Clerk with a certified copy of this Decision and Order and of the docket report for this action, together with all information necessary for the Clerk of the Western District of New York to electronically access the documents filed in this action; and it is further

**ORDERED** that the fourteen (14) day waiting period provided for in Local Rule 83.6 is hereby waived; and it is further

**ORDERED** that the following claims survive review and require a response: (1) First Amendment freedom to solicit claims against Bradford asserted by D. Zimmerman; (2) Eighth

33

Amendment deliberate medical indifference claims against Sidiq, Mann, Corlew, Gale, Johnson, Dodge, Persutti, Maxwell, and Lovely; (3) Eighth Amendment conditions-of-confinement claims against Tanzer, Collins, Farrow, Gale, Abetello, Walters, and Rocque; (4) First Amendment retaliation claims against Marsicano, Maxwell, Dodge, Montgomery, Johnson, Martuscello, Collado, and Thomas; and (5) Fourth Amendment privacy claims against Nelson, Corey, Collins, Bradford, and Caringi; and it is further

**ORDERED** that the remaining claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted;[4] and it is further

**ORDERED** that the Clerk of the Court shall terminate the following defendants to the Docket Report: Allington, Abrams, and McCarthy; and it is further

**ORDERED** that, upon receipt of the documents for service, the Clerk shall issue summonses and forward them, along with copies of the second amended complaint, to the United States Marshal for service upon the defendants.  The Clerk shall forward a copy of the summons and second amended complaint to the Office of the Attorney General, together with a copy of this Decision and Order, by electronic mail only; and it is further

---

[4]  Generally, when a district court dismisses a pro se action sua sponte, the plaintiff will be allowed to amend his action. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).  However, an opportunity to amend is not required where the plaintiff has already been afforded the opportunity to amend. *See Shuler v. Brown*, No. 9:07-CV-0937 (TJM/GHL), 2009 WL 790973, at *5 & n.25 (N.D.N.Y. March 23, 2009) ("Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint."), *accord, Smith v. Fischer*, No. 9:07-CV-1264 (DNH/GHL), 2009 WL 632890, at *5 & n.20 (N.D.N.Y. March 9, 2009); *Abascal v. Hilton*, No. 9:04-CV-1401 (LEK/GHL), 2008 WL 268366, at *8 (N.D.N.Y. Jan.130 2008); *see also Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at *2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc*., 16 F. Supp.2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once); *cf. Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend not abuse of discretion movant has repeatedly failed to cure deficiencies in pleading).

**ORDERED** that a response to the second amended complaint be filed by the defendants, or counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**ORDERED** that the Clerk is directed to serve a copy of this Decision and Order plaintiffs in accordance with the Local Rules of Practice.

Dated: April 21, 2026

Brenda K. Sannes
Chief U.S. District Judge